FRANK CAMPBELL v. THE STATE.

No. 5909.    Decided October 20, 1920.

1.—Misdemeanor Theft—Insufficiency of the Evidence—Want of Identity.

Where, upon trial of theft of property under the value of fifty dollars, the alleged stolen property was not sufficiently identified, or the alleged

tracks shown to be those of defendant's car and the evidence was otherwise insufficient to sustain the conviction, the judgment must be reversed and the cause remanded.

**2.—Same—Evidence—Declaration of Third Parties.**

Upon trial of theft, a conversation between third parties admittedly out of the presence and hearing of the defendant, in which his name was mentioned, was inadmissible.

Appeal from the County Court of Guadalupe. Tried below before the Honorable J. B. Williams.

Appeal from a conviction of misdemeanor theft; penalty, a fine of two hundred dollars and six months confinement in the county jail.

The opinion states the case.

*P. E. Campbell*, for appellant.—On question of insufficiency of the evidence: Yarbrough v. State, 151 S. W. Rep., 545; Bergfeld v. State, 213 id., 986.

On question of declaration of third party: Phinney v. State, 129 S. W. Rep., 628; Brown v. State, 150 id., 436; Ballard v. State, 160 id., 718.

*Alvin M. Owsley*, Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the County Court of Guadalupe County of the offense of theft of property under the value of fifty dollars, and his punishment fixed at a fine of two hundred dollars and six months in jail.

Appellant seems to be a boy, raised in the country near the county seat of Guadalupe County, and it was established by witnesses and officials of the county that he bore a good reputation for honesty, and seems never to have been in any trouble prior to the making of this charge.

On the afternoon preceding the night of the alleged theft, appellant drove his father to Seguin in some kind of a vehicle, the father intending to go to another part of the State to look at some land, the trip to be made in a car with a son who lived in Seguin. This other son seems to have been working at the time at a gin in Seguin, and arranged with appellant to take his place in the gin while he was gone. Appellant explains in his testimony that he had worn his best clothes when he went to town, and that he asked a young man named Bergfeld to drive him in his car out to appellant's home, some five or six miles in the country, at night, in order that he might get his working clothes, to begin work the next morning at the gin. He testified that young Bergfeld got a car from his brother Willie Bergfeld, and did drive him out to his father's place, leaving Seguin some time after one o'clock. It was in testimony that a considerable num-

ber of boys of the town were out together that night, and went down to meet the train which came in about one o'clock, and that after they separated he and young Bergfeld went after the clothes.

The property alleged to have been stolen consisted of three sacks of seed cotton. The owner was one Julian Mendoza, who had a pile of cotton in a field about a mile and a quarter from the Seguin & San Antonio Road, which was travelled by appellant and young Bergfeld on the night in question. Mendoza testified that about eleven o'clock that night, on account of the threatening weather, he went out and filled three sacks at said cotton pile, and his testimony was that there was about four hundred pounds of cotton put into said sacks. He further testified that each sack was marked with an initial in blue ink, and that he had never seen either the sacks or the cotton since their loss. He also testified that he went by said cotton pile not later than 3:30 A. M. the next day, and the three sacks were gone. Some time during the next morning, one Hiram Falor, who lived on a farm near the farm of appellant's father, hauled a load of cotton into Seguin, and on said load he carried three sacks of cotton, which the appellant claimed to own, and which he sold to the ginner. The latter testified that he bought said three sacks of cotton from the appellant, and that they contained 292 pounds of seed cotton. The sacks were not marked, nor was any attempt made to identify them as the sacks in which Mendoza placed his cotton. Shortly after buying same, the ginner was notified by the sheriff to hold the sacks and the cotton therein, as he was investigating the theft of certain sacks of cotton out in the country. The ginner said he held the sacks of cotton for two months, but nobody claimed them, and he proceeded with his trade with appellant and paid him for the cotton. To our minds, the question of the possession of the sacks of cotton as a guilty circumstance, passes out of the case, as the quantity of cotton in the respective sacks of appellant and Mendoza was entirely different, and no sort of identification was attempted of either the cotton or the sacks. Appellant, and his father, and brother, each testified that the cotton sold by appellant was a small remnant which had been placed in a crib, and that when the father left home on the occasion above referred to, he told the boys to clean out the crib so that he might gather corn on his return, and that they might have the remnant of cotton as theirs; which they did, and after putting the same in the sacks, Pat Campbell, a brother of appellant, testified that he went over to Hiram Falor's place, and asked him to come by the next morning and haul the three sacks of cotton to the gin at Seguin.

The only other guilty circumstance appearing in the record, seems to be the question of identification of certain car tracks and the testimony of certain witnesses, accompanied by the admission of appellant that he and Paul Bergfeld drove from Seguin out to his

father's place on the night of the theft in a car which had tires corresponding with the tracks referred to. The sheriff and a dequty testified that the car which made the tracks found by them at the place where the other tracks emerged from the Mendoza enclosure, appeared to have two different non-skid tires on the rear wheels. These witnesses further stated that they followed the tracks of this car to where it turned in to the place of appellant's father, and then followed them down to the house and over to the farm on which Hiram Falor lived. The record discloses that many cars in Guadalupe County have the same kind of tires on them, making the same kind of tracks as those described by the officers. It was shown that on the morning after the theft, and before the officers came to the scene thereof, that a Mr. Raul, the owner of the farm where Hiram Falor lived, had driven along the same road in his car, and gone in through the Campbell place, down to the farm where Falor lived. We have carefully examined this evidence, and are of the opinion that it does not possess either the connection or the cogency such evidence should possess in order to properly support a conviction. Eliminating the question of the identification of the cotton, we further observe that no effort was made to identify the tracks in the Mendoza field with the tracks of appellant in any way whatsoever. Hiram Falor was not placed upon the witness stand, and no effort was made to account for the failure to produce his testimony. The circumstance of appellant's trip to his father's residence on the night of the theft was fully accounted for, and does not appear to be unreasonable. The circumstance of car tracks on the road at a point between Seguin and the home of appellant's father, and where the human tracks came out of the Mendoza field, could easily be explained by the numerous similar casings on cars in that county. The evidence was entirely circumstantial, and we do not think it sufficiently strong to exclude every other reasonable hypothesis except the guilt of appellant.

During the trial, the State had occasion to use as a witness Willie Bergfeld, brother of the young man who drove appellant out to his home the night of the alleged theft. Over appellant's objection, the prosecution was permitted to ask this witness to give the details of a conversation had by him with Paul Bergfeld, his brother, on the night in question, said conversation being admittedly out of the presence and hearing of the appellant. In the conversation, it appears that appellant's name was mentioned in some way, and the witness testified to a statement that Paul Bergfeld wanted his car to drive young Campbell, or the Campbells, out home. The objection to this testimony should have been sustained, as it was material matter and out of the presence and hearing of appellant.

For the reasons given, the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*